**DYKEMA GOSSETT LLP**
ROBERT A. HYATT, Bar No. 166178
  *RHyatt@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (855) 223-2781

OF COUNSEL
**DYKEMA GOSSETT PLLC**
THOMAS J. JUDGE
  *TJudge@dykema.com*
JEFFREY J. WARD
  *JWard@dykema.com*
1301 K Street NW, Suite 1100 West
Washington, D.C. 20005
Telephone: (202) 906-8600
Facsimile: (888) 886-6915

Attorneys for Plaintiff
HARCO NATIONAL INSURANCE
COMPANY

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION (RIVERSIDE)

| | |
|---|---|
| In re:<br><br>BETTER NUTRITIONALS, LLC<br><br>_____<br><br>HARCO NATIONAL INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>    vs.<br><br>LARRY D. SIMMONS, CHAPTER 7 TRUSTEE OF BETTER NUTRITIONALS, LLC; SHARON HOFFMAN; and ODELYA HOFFMAN,<br><br>          Defendants. | Chapter 7<br><br>Case No. 6:22-bk-14723-MH<br><br>Adv. Proc. No. _____<br><br>**COMPLAINT** |

Plaintiff Harco National Insurance Company ("Harco"), by its undersigned counsel, hereby asserts this Complaint against Defendants Larry D. Simmons (the "Trustee"), in his capacity as Chapter 7 trustee of Better Nutritionals, LLC ("Better Nutritionals"), Sharon Hoffman ("Mr. Hoffman"), and Odelya Hoffman ("Ms. Hoffman,"), alleging as follows:

## **INTRODUCTION**

1.      Pursuant to Local Bankruptcy Rule 7008-1, this adversary proceeding is brought pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.  This adversary proceeding arises in and relates to *In re: Better Nutritionals, LLC*, No. 6:22-bk-14723-MH (Bankr. C.D. Cal.) (the "Bankruptcy Proceeding").  This is a non-core proceeding related to the Bankruptcy Proceeding under 28 U.S.C. § 157(b)(2) because it does not depend on the bankruptcy laws for its existence, but rather instead involves rights and obligations arising under state law.  Plaintiff does not consent to the entry of final order and judgments by this Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

2.      In this insurance coverage action, Harco seeks a declaratory judgment that it does not owe any obligation to defend or indemnify Mr. Hoffman or Ms. Hoffman (collectively, the "Hoffmans") under Policy No. PML0001115 00 (the "Policy"), which Harco issued to Better Nutritionals for the claims-made Policy Period from July 30, 2022 to July 30, 2023, in connection with an underlying adversary proceeding the Trustee has brought against the Hoffmans (the "Simmons Action") and an underlying lawsuit Goli Nutrition, Inc. ("Goli") has brought against Mr. Hoffman (the "Goli Action").  The Simmons Action and the Goli Action are referred to collectively herein as the "Underlying Actions."  The Policy does not afford any coverage for the Underlying Actions because, among other reasons, Better Nutritionals procured the Policy with an application that contained material

misrepresentations or omissions regarding facts that ultimately gave rise to the Underlying Actions.

3.    In addition to declaratory relief, Harco also seeks reimbursement for certain payments that Harco has made or will make under the Policy for the Hoffmans' defense of the Underlying Actions subject to a reservation of Harco's right to reimbursement of those payments.

## **PARTIES**

4.    Harco National Insurance Company ("Harco") is an Illinois insurance company with its principal place of business in Raleigh, North Carolina.

5.    Better Nutritionals, LLC ("Better Nutritionals") is a California limited liability company with its principal place of business in Norco, California.

6.    On information and belief, Better Nutritionals has two members. RGL Holdings, LLC, which is wholly owned by Defendant Sharon Hoffman, holds 75% of Better Nutritionals' ownership interests. 12416913 Canada, Inc., which is an inactive Canadian corporation with a principal place of business in Quebec, Canada, holds 25% of Better Nutritionals' ownership interest. Goli Nutrition, Inc., a Canadian corporation with its principal place of business in Quebec, Canada, is the successor-in-interest to 12416913 Canada, Inc.

7.    On December 20, 2022, Better Nutritionals filed a voluntary petition for relief under Chapter 11 of the United States Code in *In re: Better Nutritionals, LLC*, No. 6:22-bk-14723-MH (Bankr. C.D. Cal.) (the aforementioned "Bankruptcy Proceeding"). On March 30, 2023, the bankruptcy court entered an order converting the Bankruptcy Proceeding from a Chapter 11 proceeding to a Chapter 7 proceeding. Defendant Larry D. Simons (the "Trustee") is the Chapter 7 trustee for the estate.

8.    On information and belief, Defendant Sharon Hoffman ("Mr. Hoffman") is an individual currently residing in Las Vegas, Nevada.

9.      On information and belief, Defendant Odelya Hoffman ("Ms. Hoffman") is an individual currently residing in Las Vegas, Nevada.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.  This adversary proceeding arises in and relates to the Bankruptcy Proceeding.

12.     This is a non-core proceeding related to the Bankruptcy Proceeding under 28 U.S.C. § 157(b)(2) because it does not depend on the bankruptcy laws for its existence, but rather instead involves rights and obligations arising under state law. Plaintiff does not consent to the entry of final order and judgments by this Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

13.     Venue is proper in the Central District of California (and its Eastern Division), pursuant to 28 U.S.C. §§ 1391(b) and 1409, because a substantial part of the events or omissions giving rise to this action occurred in this District and the Bankruptcy Proceeding and the Underlying Actions are pending in this District.

14.     This action includes a request for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

## FACTUAL BACKGROUND

### The Underwriting and Issuance of the Policy

15.     The process of underwriting an insurance policy involves the insurer's receipt, review and analysis of timely and accurate information supplied by the applicant in order to permit the insurer to fairly evaluate the potential risks for which

1  coverage is sought and to determine whether, and upon what terms, a policy of

2  insurance will be issued.

3      16.    In August 2022, Better Nutritionals applied for management liability

4  insurance from Harco for the first time.

5      17.    In connection with its effort to procure coverage from Harco, Better

6  Nutritionals submitted a Management Liability Package New Business Application,

7  a copy of which is attached hereto as Exhibit A (the "Application").

8      18.    Paul Anton ("Anton"), who was then Better Nutritionals' Chief Financial

9  Officer, signed the Application on behalf of Better Nutritionals on August 4, 2022,

10  with the following representations:

> By signing this Application, the undersigned, on behalf of
> the Applicant and all insureds proposed for coverage,
> represents and agrees to each of the following five (5)
> items:
>
> 1. The Applicant firm has made a comprehensive internal
>    inquiry or investigation to determine whether any
>    Applicant firm member is aware of any act, error,
>    omission, personal injury, fact, circumstance, situation
>    or incident which could be a basis for a claim or suit
>    under the proposed insurance;
>
> 2. This Application, and any required additional
>    supplemental applications submitted to and accepted by
>    the Insurer shall constitute the Application;
>
> 3. Each of the statements and answers given in this
>    Application, and in each of the supplemental
>    applications are:
>
>    a. Accurate, true and complete to the best of the
>       Applicant's knowledge;
>
>    b. No material facts have been suppressed or
>       misstated;

      c.  Representations the Applicant firm is making on behalf of all persons and entities proposed to be insured;

      d.  A material inducement to the Insurer to provide insurance, and any policy issued by the Insurer is issued in specific reliance upon these representations.

4.  This Application, along with each of the supplemental applications are hereby deemed to be attached to, and incorporated into, any policy contract that is issued, regardless of whether the Application or any of the supplemental applications are signed or dated; and

5.  The Applicant agrees to promptly report to the Insurer, in writing, any material change in its operations, conditions, or answers provided in this Application, or any supplemental applications, that may occur or be discovered between the date of completion of such Application(s) and the inception date of any policy issued by the Insurer.  Upon receipt of any such written notice, the Insurer has the right to modify or withdraw any proposal for insurance, including any bound coverage.

*See* Ex. A, p. 12.

19.  The Application's Part I, Question 9.a ("Question 9.a") asked, "Has the Applicant in the last 24 months transacted or does the Applicant anticipate in the next 12 months . . . [a]ny actual, negotiated or attempted merger, acquisition, consolidation or divestment?"

20.  The Applicant answered "No" to Question 9.a.

21.  The Application's Part I, Question 9.b ("Question 9.b") asked, "Has the Applicant in the last 24 months transacted or does the Applicant anticipate in the next 12 months . . . [a]ny restructuring or legal or financial reorganization or filing for bankruptcy?"

22.    The Applicant answered "No" to Question 9.b.

23.    The Application's Part III, Question 1.d ("Question 1.d") asked, "Do any shareholders or group of affiliated shareholders (including an employee stock ownership plan) own five percent (5%) or more of the voting shares directly or beneficially?"

24.    The Applicant answered "No" to Question 1.d.

25.    Based upon the representations made in the Application, Harco issued Policy No. PML0001115 00 (the aforementioned "Policy") to Better Nutritionals for the claims-made Policy Period of July 30, 2022 to July 30, 2023 (attached hereto as Exhibit B).

26.    The Policy contains the following provision in Section IX of its General Terms and Conditions expressly addressing misrepresentations or omissions in the Application:

> The Insurer has relied upon the truthfulness and accuracy of the statements, representations and information in the **Application**, which is incorporated into this Policy, in providing coverage under this Policy.
>
> The **Application** for coverage under this Policy or any **Liability Coverage Part** shall be considered to be a separate **Application** for coverage by each **Insured Person**, and no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person** with respect to the **Application**.
>
> If the **Application** contains any misrepresentation or omission made with the actual intent to deceive or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under a **Liability Coverage Part**, then with respect to any **Claim** based upon, attributable to, or arising out of the facts that were not truthfully and accurately disclosed as a result of such misrepresentation or omission,

no coverage shall be provide under the respective **Liability Coverage Part** for any:

A.  **Insured Person** who knew the facts that were not truthfully and accurately disclosed in the **Application** (whether or not such misrepresentation or omission in the **Application** was known by such **Insured Person**) or any **Insured Entity** to the extent it indemnifies any such **Insured Person** . . . .

Ex. B, Policy, General Terms and Conditions ("GT&C"), § IX.[1]

### **The Bankruptcy Proceeding**

27.  On December 20, 2022, Better Nutritionals filed a voluntary petition for relief under Chapter 11 of the United States Code in the Riverside Division of the United States Bankruptcy Court for the Central District of California, captioned *In re Better Nutritionals*, No. 6:22-bk-14723-RB (Bankr. C.D. Cal.) (the aforementioned "Bankruptcy Proceeding").

28.  The same day, Mr. Hoffman filed a sworn declaration in support of Better Nutritionals' first day motions.  A true and correct copy of the Declaration of Sharon Hoffman in Support of First Day Motions (Bankruptcy Proceeding, DE 14) is attached as Exhibit C.

29.  According to Mr. Hoffman's declaration, Better Nutritionals grew significantly from 2019 through 2021, with sales revenue increasing from $21.8 million in 2019 to $222.8 million in 2021, and its net income rising at the same time from $1.5 million to $23.5 million.  Ex. C, ¶ 12.

30.  In contrast, however, Better Nutritionals' financial performance suffered dramatically during 2022.  For the twelve months ending on September 30, 2022, Better Nutritionals revenues were down and its expenses were up, leading to a net loss during that 12-month period of about $45 million.  Ex. C, ¶ 12.

---

[1] Terms in boldface text are defined in the Policy.

31.    Mr. Hoffman's declaration attributed the abrupt change in Better Nutritionals' financial performance to a series of wrongful acts by Goli, which was at the time by far the largest customer of Better Nutritionals.  According to Mr. Hoffman, Goli, in 2021, told Better Nutritionals that Goli intended to purchase from Better Nutritionals 12 to 15 million bottles per month of Better Nutritionals' product, Ex. C, ¶ 24, and that Better Nutritionals incurred substantial costs in order to satisfy Goli's stated anticipated demand, Ex. C, ¶ 25.  However, Goli's actual purchases from Better Nutritionals were a small fraction of its previously stated anticipated demand.  Ex. C, ¶¶ 27-28.  Better Nutritionals attempted unsuccessfully to offset the loss of anticipated revenue from Goli with an increase in revenues from non-Goli customers.  Ex. C, ¶ 29.

32.    Because of its financial difficulties, Better Nutritionals anticipated a bankruptcy before it submitted the Application for the Policy on August 4, 2022.

33.    Anton, who signed the Application, testified in the Bankruptcy Proceeding that he, Mr. Hoffman and Better Nutritionals' then general counsel, Patrick Loran, discussed the possible filing of a bankruptcy case in the first quarter of 2022.  *See* Bankruptcy Proceeding, DE 309, Notice of Lodging of Jan. 20, 2023 Dep. of P. Anton, a true and correct copy of which is attached hereto as Exhibit D at 41:17-42:2.

34.    Anton also testified that those discussions continued over a period of several months from April through October 2022, Ex. D at 42:25-43:11, expanding beyond just Better Nutritionals' internal management group to include outside bankruptcy counsel, John Tedford of Danning, Gill, Israel & Krasnoff, LLP, Ex. D at 124:8-124:25.

35.    According to Mr. Hoffman's first day declaration, Better Nutritionals retained the Danning Gill firm to provide insolvency-related legal advice on or about July 1, 2022.  Ex. C, ¶ 72.

36.     While Better Nutritionals was discussing a bankruptcy filing, it also was discussing a potential merger, acquisition, consolidation or divestment.

37.     Anton testified that, starting roughly in June and July 2022, the Hoffmans retained an investment banker, William Hood & Associated, to market Better Nutritionals for sale, and multiple potential buyers did due diligence for a purchase of Better Nutritionals.  (Ex. D at 104:1-105:12).

38.     According to Anton's testimony, Better Nutritionals pursued the potential sale in an attempt to avoid a bankruptcy filing.  (Ex. D at 109:1-109:20).

39.     In addition to discussing a bankruptcy filing or sale, Better Nutritionals also discussed a divestment of facilities or equipment in the months immediately prior to submitting the Application.

40.     Roger Tyre ("Tyre"), Better Nutritionals' former Chief Operating Officer, testified in the Bankruptcy Proceeding that beginning in mid-August 2021, Better Nutritionals' executive leadership team—including Mr. Hoffman and Anton—discussed at least once per month through December 2022 potentially closing either the Norco or Gardena facilities because of declining product demand.  *See* Bankruptcy Proc., DE 312, Notice of Lodging of Trans. of Jan. 19, 2023 Dep. of R. Tyre, a true and correct copy of which is attached as Exhibit E, at 15:10-17:12.

41.     Tyre also testified that starting mid-year 2022, Better Nutritionals' executive team talked approximately twice per month about selling equipment.  (Ex. F at 34:1-34:22).

42.     As set forth above, Better Nutritionals filed its bankruptcy petition on December 20, 2022.

### **The Goli Action**

43.     On or about March 24, 2023, Goli filed the Complaint against Mr. Hoffman in *Goli Nutrition Inc. v. Sharon Hoffman*, No. 5:23-cv-00514-GW-KK (C.D.

Cal.) (the aforementioned "Goli Action").  A copy of the Complaint in the Goli Action is attached hereto as Exhibit F.

44.     In the Complaint, Goli alleges that Hoffman "abused his position" as the founder, Chief Executive Officer ("CEO"), manager and controlling member of Better Nutritionals "to use Better Nutritionals as a source of financial gain for himself to the detriment of the minority member, Goli."  Ex. F, ¶ 3.

45.     Goli alleges that it received a 25% ownership stake in Better Nutritionals in 2020, and that "after Goli became the minority member Hoffman repeatedly oppressed Goli and continued to act as if he were the sole stakeholder of Better Nutritionals, improperly using the company to increase his personal wealth to Goli's detriment."  Ex. F, ¶¶ 3, 13.

46.     Goli alleges that Hoffman issued himself "millions of dollars in distributions" while "failing to notify Goli that distributions were being made" and "never making a distribution to Goli as was required under [Better Nutritionals'] Operating Agreement and California law."  Ex. F, ¶ 6.

47.     Goli also alleges that Hoffman used "Better Nutritionals' funds to pay himself and his wife, who performed no recognizable duties on behalf of Better Nutritionals, exorbitant salaries and commissions, which were really disguised distributions."  Ex. F, ¶ 6.

48.     Hoffman also allegedly used Better Nutritionals funds "to purchase a new lavish multi-million dollar home, as a way to funnel money to the Hoffmans and away from Goli."  Ex. F, ¶ 6.

49.     Goli further alleges that Hoffman caused Better Nutritionals "to default on its legal and contractual obligations to creditors," and "to abandon a sale of the company that would have preserved value for Goli as the minority member because Hoffman's personal tax liability and bills would not have been completely paid off in the transaction."  Ex. F, ¶ 6.

50.     Goli's Complaint purports to assert causes of action against Hoffman for breach of the Operating Agreement, *see* Ex. F., ¶¶ 80-87; breach of fiduciary duty, *see* Ex. F, ¶¶ 88-92; breach of the implied covenant of good faith and fair dealing implied in the Operating Agreement, *see* Ex. F, ¶¶ 93-97; conversion, *see* Ex. F, ¶¶ 98-102; fraud, *see* Ex. F, ¶¶ 103-111; and unjust enrichment, *see* Ex. F, ¶¶ 112-116.

51.     Goli seeks to recover monetary damages, punitive and exemplary damages, disgorgement of all monies determined to belong to Goli, pre- and post-judgment interest, and costs and attorneys' fees. *See* Ex. F, p. 21.

**The Simmons Action**

52.     On or about February 15, 2024, the Trustee filed the Complaint against the Hoffmans in the adversary proceeding captioned *Larry D. Simmons, Chapter 7 Trustee v. Sharon Hoffman, et al.*, No. 6:24-cv-01015-MH (Bankr. C.D. Cal.) (the aforementioned "Simmons Action"). A copy of the Complaint in the Simmons Action is attached hereto as Exhibit G.

53.     In the Complaint, the Trustee alleges that Better Nutritionals "had been in a dire financial position for months before it filed its chapter 11 case," and that Better Nutritionals' "management had been discussing its insolvency and potential bankruptcy since the beginning of 2022." Ex. G, ¶ 2.

54.     In particular, the Trustee alleges that Better Nutritionals' management—including Mr. Hoffman—initially discussed a bankruptcy filing in the first quarter of 2022, and that the discussion continued between April 2022 and October 2022. Ex. G, ¶ 26.

55.     The Trustee also alleges that before Better Nutritionals filed the Bankruptcy Proceeding, it "received an offer to purchase the business that would have made all creditors mostly or entirely whole and supplied its owners with the opportunity to collect a significant earnout." Ex. G, ¶ 2. Mr. Hoffman, however,

allegedly "blocked the transaction" because it was not "good enough" for him."  Ex. G, ¶ 3.

56.    The Trustee alleges that Mr. Hoffman breached his fiduciary duty to Better Nutritionals and its creditors by refusing to enter into the transaction for the sale of Better Nutritionals, and instead causing Better Nutritionals to file the Bankruptcy Proceeding.  Exhibit G, ¶ 5.

57.    The Trustee's Complaint purports to assert causes of action against Mr. Hoffman for breach of the fiduciary duty of loyalty and care, Ex. G, ¶¶ 41-51; breach of the duty of good faith and fair dealing, Ex. G, ¶¶ 52-56; and breach of fiduciary duty to creditors under the trust fund doctrine, Ex. G, ¶¶ 57-62.  The Complaint also purports to assert a cause of action against Ms. Hoffman for aiding and abetting breach of fiduciary duty.  Ex. G, ¶¶ 63-67.  And, the Complaint purports to assert a cause of action against Mr. and Ms. Hoffman for equitable subordination under 11 U.S.C. § 510.  Ex. G, ¶¶ 68-72.

58.    The Trustee seeks, in addition to other relief, "compensatory damages in the amount of not less than $100 million . . . punitive damages . . . [and] attorneys' fees."  Ex. F, p. 14.

**Material Misrepresentations in the Application**

59.    Harco seeks a declaration from this Court that the Policy does not afford any coverage for the Hoffmans for the Underlying Actions because the Application for the Policy contains the following material misrepresentations.

60.    The Application's Question 9.a asked, "Has the Applicant in the last 24 months transacted or does the Applicant anticipate in the next 12 months . . . [a]ny actual, negotiated or attempted merger, acquisition, consolidation or divestment?"  The Applicant answered "No" to Question 9.a.

61.    The answer to Question 9.a. was a material misrepresentation or omission.  The Applicant should have, but did not, disclose that Better Nutritionals

anticipated in the next 12 months an actual, negotiated or attempted merger, acquisition, consolidation or divestment.  The transactions referenced in Question 9.a. are known to create an increased risk of claims against corporate managers.

62.    The answer to Question 9.a. was a material misrepresentation or omission because, as set forth above, Better Nutritionals actively sought acquisition partners and anticipated divestment of facilities or equipment before Anton signed the Application on August 4, 2022.

63.    The Application's Question 9.b asked, "Has the Applicant in the last 24 months transacted or does the Applicant anticipate in the next 12 months . . . [a]ny restructuring or legal or financial reorganization or filing for bankruptcy?"  The Applicant answered "No" to Question 9.b.

64.    The answer to Question 9.b. was a material misrepresentation or omission.  The Applicant should have, but did not, disclose that Better Nutritionals anticipated in the next 12 months a restructuring or legal or financial reorganization or filing for bankruptcy.  A bankruptcy is known to create an increased risk for claims against the debtor's management.

65.    The answer to Question 9.b. was a material misrepresentation or omission because, as set forth above, Better Nutritionals' management discussed its insolvency and potential bankruptcy—and even retained outside counsel for insolvency-related legal advice—before Anton signed the Application on August 4, 2022.

66.    The Application's Question 1.d asked, "Do any shareholders or group of affiliated shareholders (including an employee stock ownership plan) own five percent (5%) or more of the voting shares directly or beneficially?"  The Applicant answered "No" to Question 1.d.

67.    The answer to Question 1.d was a material misrepresentation or omission because, on information and belief, Hoffman entered into an equity sharing

COMPLAINT

transaction with Goli finalized in December 2020 pursuant to which Goli received a 25% ownership stake in Better Nutritionals.  Companies with a minority shareholder owning five percent (5%) or more of the voting shares are known to present increased risk of claims.

68.    The true facts that were misrepresented or omitted in the answers to Question 9.a, Question 9.b, and Question 1.d were known by both Mr. and Ms. Hoffman.  The Hoffmans are the co-founders of Better Nutritionals.  Mr. Hoffman was its CEO, and he has stated under oath that Ms. Hoffman was the co-CEO and part of all the executive decisions.  (Bankruptcy Proceeding, DE 385, Mar. 1, 2023 341(a) Meeting Tr. at 33:4-9, 43:10).

69.    If the true facts that were misrepresented or omitted in the answers to Question 9.a, Question 9.b, and Question 1.d had been known to Harco, it either would not have issued the Policy, or would not have issued the Policy at the same premium or with the same limit of liability or with any coverage with respect to the hazards resulting in the Underlying Actions.

**Defense of the Underlying Actions**

70.    On or about April 24, 2023, Harco received notice of the Goli Action, for which Better Nutritionals sought coverage under the Policy.

71.    In April, May, and June 2023, Harco made numerous unsuccessful attempts to communicate with Mr. Hoffman regarding the Goli Action.

72.    From April 24, 2023 through February 29, 2024, Harco received no communication from Mr. Hoffman regarding the Goli Action.

73.    Because Harco received no communication from Mr. Hoffman during that time period, Harco closed its file for the Goli Action.

74.    On July 28, 2023, Harco received a letter from the Trustee's counsel purporting to provide a notice of circumstances expected to give rise to a Claim

pursuant to the Policy's Section VI.B.  A copy of the July 28, 2023 letter is attached hereto as Exhibit H.

75.  In February 2023, Harco obtained a copy of the Complaint that the Trustee filed on February 15, 2024 in the Simmons Action.

76.  On February 29, 2024, Harco received an email from Better Nutritionals' broker asking Harco to reopen its file for the Goli Action and provide a coverage assessment for it.

77.  By letter dated March 28, 2024, Harco provided its preliminary coverage assessment for the Goli Action, advising Mr. Hoffman that Harco's funding of a defense for Mr. Hoffman in the Goli Action would be subject to a complete reservation of Harco's rights, including the right to deny coverage for the Goli Action and seek reimbursement for any amounts paid under the Policy.  A copy of Harco's March 28, 2024 letter is attached hereto as Exhibit I.

78.  Meanwhile, by letter dated March 5, 2024, Harco provided its preliminary coverage assessment for the Simmons Action, advising the Hoffmans that Harco's funding of a defense for the Simmons Action would be subject to a complete reservation of Harco's rights, including the right to deny coverage for the Simmons Action and seek reimbursement for any amounts paid under the Policy.  A copy of Harco's March 5, 2024 letter is attached hereto as Exhibit J.

## COUNT I:  DECLARATORY JUDGMENT

## (Misrepresentations or Omissions in the Application Bar Coverage for the Underlying Actions)

79.  Harco repeats and incorporates by reference the allegations in paragraphs 1 through 78 of this Complaint.

80.  Better Nutritionals' responses to the Application's Questions 9.a, 9.b, and 1.d were misrepresentations or omissions made with the actual intent to deceive.

81.     Better Nutritionals' responses to the Application's Questions 9.a, 9.b, and 1.d were misrepresentations or omissions which materially affected Harco's acceptance of the risk or the hazard Harco assumed under the Policy.

82.     The Simmons Action is a Claim based upon, attributable to, or arising out of the facts that were not truthfully and accurately disclosed as a result of the misrepresentations or omissions in the Application's Questions 9.a and 9.b.

83.     The Goli Action is a Claim based upon, attributable to, or arising out of the facts that were not truthfully and accurately disclosed as a result of the misrepresentations or omissions in the Application's Questions 9.a, 9.b, and 1.d.

84.     The Hoffmans knew the true facts that were not truthfully and accurately disclosed in the Application.

85.     Based on the foregoing, Section IX of the Policy's GT&C applies to bar coverage for the Underlying Actions.

86.     Harco therefore seeks a ruling from this Court that Harco has no duty to provide defense or indemnity coverage under the Policy in response to the Underlying Actions.

## <u>COUNT II:  DECLARATORY JUDGMENT</u>

### <u>(The Policy Does Not Afford Coverage for the Underlying Actions because They Are Not Claims Against an Insured Person in their Capacity as Such)</u>

87.     Harco repeats and incorporates by reference the allegations in paragraphs 1 through 86 of the Complaint.

88.     The Policy affords coverage only for a Claim against Insured Persons for a Wrongful Act.  *See* Ex. B, Policy, D&O Coverage Part § I.

89.     The Policy defines the term Insured Person to mean any Employee or Executive of Better Nutritionals.  *See id.*, GT&C § III.  And, it defines Executive to mean, in pertinent part, any "past, present or future duly elected or appointed . . . **Manager**" of Better Nutritionals.  *See id.*

17
COMPLAINT

90.    Furthermore, the Policy defines the term Wrongful Act to mean any "error, misstatement, misleading statement, neglect, breach of duty, omission or act committed, attempted or allegedly committed or attempted by . . . an **Insured Person** in his or her capacity as such" or any "matter claimed against an **Insured Person** solely by reason of his/her status as such." *See id*., D&O Coverage Part § III.

91.    The Policy does not afford coverage for the Underlying Actions because they are not Claims against Insured Persons for a Wrongful Act.

92.    The complaints in the Underlying Actions allege that Mr. Hoffman wrongfully blocked a sale of Better Nutritionals that allegedly would have prevented Better Nutritionals' bankruptcy because the sale transaction was not good enough for Mr. Hoffman.  The complaints allege that Mr. Hoffman's refusal to complete the sale transaction breached his fiduciary duties by seeking to benefit himself instead of benefiting all Better Nutritionals members.

93.    Mr. Hoffman's personal interests in the sale transaction were his noninsured interests as a member/owner of Better Nutritionals and not his interests as its Manager.

94.    Moreover, Mr. Hoffman could accept or reject a sale of his ownership of Better Nutritionals or its assets only in his noninsured capacity as a member/owner of Better Nutritionals.

95.    In addition to alleging that Mr. Hoffman wrongfully refused to sell his ownership interest in Better Nutritionals, the Complaint in the Goli Action also alleges that Mr. Hoffman improperly issued distributions to himself.

96.    Mr. Hoffman received such distributions in his noninsured capacity as a member/owner of Better Nutritionals.

97.    The Complaint in the Goli Action also alleges that Mr. Hoffman breached Better Nutritionals' Operating Agreement.

98.    Better Nutritionals' Operating Agreement is a contract that Mr. Hoffman entered into in his noninsured capacity as a member/owner of Better Nutritionals.

99.    For all of these reasons, the Policy does not afford coverage for the Underlying Actions because they are not Claims against an Insured Person for a Wrongful Act in an insured capacity.

## COUNT III:  DECLARATORY JUDGMENT

### (Harco Is Not Liable for Defense Costs Incurred without Its Consent)

100.    Harco repeats and incorporates by reference the allegations in paragraphs 1 through 99 of the Complaint.

101.    The Policy provides that the Insureds shall not "incur any **Defense Costs**, admit any liability or assume any contractual obligation, accept or consent to any settlement, make any offer of settlement or stipulate to any judgment, without the Insurer's prior written consent."  Ex. B, Policy, GT&C § VIII, as modified by Endorsement PML 12 95 09 21 (the "Consent Clause")

102.    The Policy also provides that Harco "shall not be liable for any **Loss** for which the **Insureds** must obtain the Insurer's consent as described above unless the Insurer provides its prior written consent thereto." *Id.*

103.    Harco made numerous attempts to communicate with Mr. Hoffman regarding the Goli Action and his defense to it in 2023, but did not receive any responses.

104.    Harco also attempted to communicate with the Hoffmans in March 2024 regarding the Simmons Action and their defense to it, but has not received a response.

105.    The Hoffmans have been defending the Underlying Actions without providing Harco with any information or seeking Harco's consent to any Loss, including Defense Costs, in connection with the Underlying Actions.

106.    The Hoffmans therefore have breached the Policy's Consent Clause.

107.  For these reasons, the Policy does not afford coverage for any Loss, including Defense Costs, the Hoffmans have incurred without Harco's prior written consent.

### COUNT IV:  DECLARATORY JUDGMENT

### (The Hoffmans Breached the Policy's Cooperation Clause)

108.   Harco repeats and incorporates by reference the allegations in paragraphs 1 through 107 of the Complaint.

109.   The Policy provides that the Insureds shall provide Harco with "all cooperation, assistance and any information which the Insurer may reasonably request" and shall not "do anything that may increase the Insurer's liabilities." Ex. B, Policy, GT&C § VIII, as modified by Endorsement PML 12 95 09 21 (the "Cooperation Clause").

110.   The Policy also provides that Harco "shall have the right to make any reasonable investigation of any **Claim** or **Noticed Matter** that the Insurer deems necessary or appropriate." *Id.*

111.   Harco made numerous attempts to communicate with Mr. Hoffman in 2023 to obtain information regarding the Goli Action and his defense to it, but did not receive any responses.

112.   Harco also attempted to communicate with the Hoffmans in March 2024 to obtain information regarding the Simmons Action and their defense to it, but Harco has not received a response.

113.   The Hoffmans have been defending the Underlying Actions without providing Harco with any cooperation, assistance, or information that Harco has requested.

114.   Mr. Hoffman therefore has breached the Policy's Cooperation Clause.

115.   The Hoffmans' breach of the Policy's Cooperation Clause has caused substantial prejudice to Harco.

116.   Harco is entitled to deny coverage for the Underlying Actions based on the Hoffmans' breach of the Policy's Cooperation Clause.

## COUNT V:  DECLARATORY JUDGMENT
### (Reservation of Rights)

117.   Harco repeats and incorporates by reference the allegations in paragraphs 1 through 116 of the Complaint.

118.   The Policy only affords coverage based on its terms, conditions, exclusions, and limitations, and Harco has reserved its right to deny or limit coverage for the Underlying Actions based on any applicable provisions of the Policy or applicable law, including the specific coverage issues set forth below.

119.   First, the Policy affords coverage only for Claims first made against the Insured Persons during the Policy Period, which is July 30, 2022 to July 30, 2023. *See* Ex. B, Policy, Declarations Item 2, and D&O Coverage Part § I.A.

120.   The Complaint in the Goli Action was filed on March 24, 2023, which is during the Policy Period.  However, as part of its attempt in 2023 to perform a coverage assessment, Harco requested on June 19, 2023 that Mr. Hoffman provide copies of all pre-litigation correspondence related to the Goli Action.  Harco never received any response to that request.  Harco reserves its right to deny coverage for the Goli Action in the event that Goli—in pre-litigation correspondence or otherwise—first made its Claim against any Insured before the Policy Period.

121.   Second, the Policy affords coverage only for Loss, which is defined in relevant part to include Defense Costs, compensatory damages, judgments, an award of pre-judgment or post-judgment interest with respect to covered damages, settlements, and claimants' attorneys' fees and costs for which an Insured against whom the Claim is made is legally obligated to pay.  *See* Ex. B, Policy, D&O Coverage Part § III.

122.   The Policy defines the term Defense Costs to mean, in pertinent part, "that part of **Loss** consisting of reasonable costs, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than **Overhead Expenses**) incurred by the Insureds . . . in defending or investigating **Claims**, including costs assessed against the **Insureds** in a **Claim** or the premium for appeal, attachment or similar bonds, provided the Insurer shall have no obligation to apply for or furnish such bonds." Ex. B, Policy, GT&C § III.

123.   The Policy's definition of Loss expressly does not include, among other things, costs incurred by Insureds to comply with injunctive or other non-monetary relief, or amounts which are uninsurable under the law pursuant to which the Policy is construed.  *See* Ex. B, Policy, D&O Coverage Part § III.  Loss also does not include punitive, exemplary or multiple damages.  *See id*., California Changes endorsement, PML 11 78 04 20.

124.   Harco reserves its right to deny coverage for any amount that is not Loss, including but not limited to any injunctive or non-monetary relief, punitive or exemplary damages, any unreasonable attorney's fees or costs for the defense of the Underlying Actions, or any amounts that are uninsurable under applicable law, including contractual liability, restitution or disgorgement.

125.   Third, the Policy provides that Harco "shall not be liable to pay any **Loss** in connection with any **Claim** . . . based upon or arising from any . . . **Conduct**," and it defines the term Conduct to mean "(i) the **Insured's** gaining of profit or other financial advantage to which the **Insured** was not legally entitled; or (ii) the **Insured's** commission of a deliberate crime, deliberate fraud or a deliberate dishonest act or omission or willful violation of any law or regulation; provided the gaining of such profit or advantage or the commission of such conduct is established by a final non-appealable adjudication in the underlying proceeding and not in a proceeding by or against the Insurer."  Ex. B, Policy, GT&C § III, and D&O Coverage § IV.A.

126.   The Simmons Action Complaint alleges that Mr. Hoffman breached his duty of loyalty to Better Nutritionals and breached his fiduciary duty with malice, oppression or fraud.  The Simmons Action Complaint also alleges that Ms. Hoffman acted with malice, oppression or fraud while assisting Mr. Hoffman's breach of fiduciary duties.

127.   The Goli Action Complaint alleges that Mr. Hoffman misappropriated funds for his own benefit that should have been distributed to Goli.  The Goli Action Complaint also alleges that Hoffman intentionally misrepresented and/or concealed Better Nutritionals' financial condition while unjustly receiving amounts from Better Nutritionals.

128.   Harco reserves its right to deny coverage for the Underlying Actions in the event that a final non-appealable adjudication establishes that the Conduct exclusion applies.

129.   Fourth, California Insurance Code Section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

130.   The Simmons Action Complaint alleges that Mr. Hoffman breached his fiduciary duties, and Ms. Hoffman aided and abetted his breach, with malice, oppression or fraud.

131.   The Goli Action Complaint alleges that Hoffman is liable for fraud for intentionally misrepresenting and/or concealing Better Nutritionals' financial condition while unjustly enriching himself.

132.   Harco reserves its right to deny coverage for the Underlying Actions to the extent that California Insurance Code Section 533 applies.

## COUNT VI:  RESTITUTION/RECOUPMENT

133.   Harco repeats and incorporates by reference the allegations in paragraphs 1 through 132 of this Complaint.

134.   By letters dated March 5, 2024 and March 28, 2024, Harco advised the Hoffmans that Harco would provide a defense to the Simmons Action and the Goli Action subject to a complete reservation of Harco's rights, including the right to deny coverage for the Underlying Actions and seek reimbursement for any amounts paid under the Policy.

135.   The Policy does not afford any defense or indemnify coverage for the Hoffmans in connection with the Underlying Actions.

136.   Harco therefore is entitled to recoup from the Hoffmans any amounts that it pays for the defense of the Underlying Actions.

### **PRAYER FOR RELIEF**

WHEREFORE, Harco prays for judgment as follows:

(a)    Under Counts I to V, for a declaration of the parties' rights, duties and obligations under the Policy, and specifically a declaration that Harco has no duty to provide defense or indemnity coverage for the Hoffmans under the Policy for the Underlying Actions;

(b)    Under Count VI, a judgment against Defendants Sharon and Odelya Hoffman, jointly and severally, in an amount equal to any defense costs that Harco pays for the Hoffmans in connection with the Underlying Actions;

(c)    For pre-judgment and post-judgment interest in accordance with law;

(d)    For expenses and costs incurred in this action; and

(e)    For such other and further relief as this Court deems just and proper.

///
///
///

COMPLAINT

1

## **JURY DEMAND**

2      Harco demands a trial by jury on all issues triable to a jury.

3

4    DATED:  April 18, 2024          DYKEMA GOSSETT LLP

5

6                                    By: _____

7                                        ROBERT A. HYATT
                                        Attorneys for Plaintiff
8                                        HARCO NATIONAL INSURANCE
                                        COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28